UNITED STATS DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Magistrate No.: |
| | : | |
| | : | FILED UNDER SEAL |
| v. | : | |
| | : | VIOLATION: |
| SHALOME ODOKARA, | : | |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| Defendant. | : | 18 U.S.C. § 2 (Causing an Act to be Done) |
| | : | 18 U.S.C. §§ 2461(c) and 981(a)(1)(C) |
| | : | (Criminal Forfeiture) |

**INFORMATION**

The United States Attorney informs the Court that:

**COUNT ONE - CONSPIRACY**

At all times material herein:

**INTRODUCTION**

The Defendant and Coconspirator

1. Defendant SHALOME ODOKARA was occasionally employed with the World Bank Group ("WBG") as a consultant. Defendant ODOKARA either assisted in, or was responsible for, the design, development and coordination of certain learning events and/or workshops conducted by the WBG.

2. A.K. was a coconspirator employed as an accounting assistant ("assistant") in the accounting department at the WBG. A.K.'s job responsibilities included: (i) reviewing, processing and executing accounting transactions related to the business of the WBG's accounting department; and (ii) consulting with persons and entities both inside and outside the bank to effect payments and resolve accounting related issues.

3. Defendant ODOKARA befriended A.K. in the Spring of 2000.

4. Defendant ODOKARA maintained an account at the University Credit Union under the name of Women In Need ("Women in Need account") in Portland, Maine. Defendant ODOKARA also maintained an account in her name at the Bank-Fund Staff Federal Credit Union ("BFSFCU") in Washington, D.C.

5. A.K. maintained an account in her name at BFSFCU. A.K. also maintained an account in her name at the Chevy Chase Bank located in Maryland ("Chevy Chase account").

The Bank

6. The WBG was an international organization, owned and/or financed by over 180 member countries, whose mission was to fight poverty and improve the living standards of people in the developing world. The WBG's headquarters were located at 1818 H Street, N.W., Washington, D.C.

7. The International Bank for Reconstruction and Development ("the Bank") was a component of the WBG. The Bank aimed to reduce poverty in middle-income and creditworthy poorer countries by promoting sustainable development through loans, guarantees, and analytical and advisory services. From July 1, 2000 to June 30, 2001, the Bank received millions in dollars in federal aid and assistance from the United States government.

Payment of Bank Consultants

8. The Bank appointed consultants for a fixed period of time to provide work on specified assignments. At the time of the appointment, each consultant provided the Bank with a mailing address, contact information, email address, and banking information.

9. Consultants were usually paid on their contracts with the Bank on a periodic basis.

To receive payment, a consultant submitted an invoice to the Bank's hiring department responsible for supervising the consultant's performance under the contract. The pertinent information from the invoice was then entered into a computer program, generally referred to as SAP, which the Bank used to process its payments to consultants. For each consultant, SAP maintained the consultant's bank routing and/or mailing information and payment method.

10. The Bank's accounting department was responsible for processing payments to the consultants. Consultant's were generally paid by money transfer or by check. For each unpaid invoice, an assistant confirmed that SAP included the consultant's payment method, bank routing information and/or mailing address. Thereafter, an assistant would create a payment request to authorize the Bank's treasury department to send a money wire or mail a check per the consultant's SAP payment information.

11. On occasion, for a variety of reasons, the wire transfers or checks did not accomplish the transfer of Bank monies to the consultant. Such reasons included, for example, instances where the consultant's bank account had been closed, where the consultant had opened a new bank account without disclosing the new account information to the Bank, or where the consultant had moved to a new address without disclosing the new address to the Bank. In those instances, the check or money transfer was returned to the Bank ("returned Bank funds").

12. The Bank's accounts payable section was responsible for fixing the problems associated with returned bank funds. For example, an assistant would help identify the consultant's correct bank routing information and/or mailing address. Once an assistant obtained the consultant's correct payment information, the assistant would request that a more senior assistant modify the consultant's information in SAP to reflect the new payment information. Once the consultant's

information was changed consistent with the assistant's instructions, an assistant prepared a payment request to the Bank's treasury department to pay the consultant at the consultant's new address and/or bank account in SAP.

13. During the time period between the Bank's receipt of the returned Bank funds and the issuance of a new payment, an assistant would place a payment block on the consultant's account. A payment block would ensure that the Bank did not attempt to make any additional payments based on the erroneous information in SAP. An assistant would lift this payment block when the consultant's new information was entered in SAP.

14. Each assistant entered SAP with a personal log-in identification code and password. The assistant's log-in identification code was a unique Bank employee identifier based on his/her employee identification number. Each assistant created his or her password. Bank policy prohibited the sharing of SAP log-in identification codes and passwords.

### The Consultants

15. W.B. was a Bank Consultant who was owed money by the Bank.

16. I.G. was a Bank Consultant who was owed money by the Bank.

17. S.M. was a Bank Consultant to whom the Bank issued a credit in the amount of $7,761.

18. J.L. was a Bank Consultant who was owed money by the Bank.

19. D.L. was a Bank Consultant who was owed money by the Bank.

20. M.G. was a Bank Consultant who was owed money by the Bank

21. P.T. was a Bank Consultant who was owed money by the Bank.

22. M.M. was a Bank Consultant who was owed money by the Bank.

23.     E.H. was a Bank Consultant to whom the Bank issued a credit in the amount of $20,218.60.

## THE CONSPIRACY

24.     From between on or about March 27, 2001 until on or about September 24, 2001, in the District of Columbia and elsewhere, defendant ODOKARA and A.K., and others known and unknown, did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, that is, to embezzle, steal, obtain by fraud, and without authority convert to the use of a person not the rightful owner, monies, worth at least $5,000, under the care, custody, and control of the Bank, an entity which received benefits in excess of $10,000 from the federal government for the one-year period of July 1, 2000 to June 30, 2001, with a federal interest having been implicated by said embezzlement, stealing, fraud, and conversion, in violation of Title 18, United States Code, Section 666(a)(1)(A).

## GOAL OF THE CONSPIRACY

25.     It was a goal of the conspiracy that defendant ODOKARA and A.K. would enrich themselves by obtaining Bank funds by fraud.

## MANNER AND MEANS OF THE CONSPIRACY

26.     It was a part of the conspiracy that A.K. unlawfully diverted returned Bank funds to defendant ODOKARA, who then, almost immediately thereafter, redirected a substantial portion of the diverted monies to A.K., thereby resulting in an immediate profit to be enjoyed by defendant ODOKARA and A.K.

27.     It was further a part of the conspiracy that A.K. used SAP to identify returned Bank funds owed to its consultants and returned by the Bank's treasury department.  For each returned

item, A.K. would purport to identify the cause for the returned Bank funds and to research and obtain the consultant's correct bank routing information and/or mailing address.

28. It was further a part of the conspiracy that A.K. would cause the diversion of the returned Bank funds to defendant ODOKARA by:

(a) falsely changing consultants' payment method in SAP to money wire into defendant ODOKARA'S BFSFCU account;

(b) falsely transferring, or informing a more senior assistant to transfer, a credit owed to other consultants from the returned Bank funds to defendant ODOKARA's BFSFCU account;

(c) falsely requesting a more senior assistant to change other consultants' payment information with defendant ODOKARA's name and/or account information, thereby misleading the more senior assistant to substitute the consultant's name and/or account information with Ms. ODOKARA's name and/or account information;

(d) falsely removing the payment block on the returned Bank funds intended for other consultants; and

(e) falsely preparing a payment request to the Bank's treasury department to wire returned Bank funds to defendant ODOKARA's BFSFCU account, thereby misleading the Bank to issue payments, intended for other consultants, to defendant ODOKARA.

29. It was further a part of the conspiracy that A.K. would thereafter falsely cause the Bank to issue nine money wires, totaling approximately $108,666.24 in returned Bank funds owed, in part, to other consultants, into defendant ODOKARA's BFSFCU account.

30. It was further a part of the conspiracy that, almost immediately after the receipt of

each fraudulent money wire, defendant ODOKARA would redirect by money wire, personal check and cashier's check a substantial portion of the stolen Bank funds, totaling approximately $41,513, to A.K. It was further part of the conspiracy that defendant ODOKARA would redirect an additional portion of the stolen Bank funds to A.K. in cash.

.       31.    It was further a part of the conspiracy that defendant ODOKARA and A.K. conspired to steal Bank funds issued to the following consultants by means of the fraudulent scheme set forth above: W.B., I.G., S.M., J.L., D.L., P.T., M.M. and E.H. As a result of the conspiracy, defendant ODOKARA and A.K. fraudulently stole more than $108,666.24 from the Bank.

**OVERT ACTS**

32.    Within the District of Columbia and elsewhere, in furtherance of the conspiracy and to accomplish the goals thereof, the following overt acts, among others, were committed and caused to be committed by defendant ODOKARA, and other coconspirators

**Overt Acts (1)-(6) Regarding Diversion of Returned Bank Funds Owed to W.B.**

(1)____On or about March 27, 2001, A.K. caused a more senior assistant to transfer a credit involving returned Bank funds owed by the Bank to W.B. in the amount of $16,875 into defendant ODOKARA's BFSFCU account.

(2)____On or about March 27, 2001, A.K. changed W.B.'s payment method in SAP to money wire into BFSFCU.

(3)____On or about March 27, 2001, A.K. prepared a payment request for the Bank's treasury department to wire $14,875 into defendant ODOKARA's BFSFCU account.

(4)____On or about March 28, 2001, A.K. caused the Bank's treasury department to wire $14,875 into defendant ODOKARA's BFSFCU account.

(5)    On or about March 28, 2001, defendant ODOKARA wrote a personal check in the amount of $7,400 ("the $7,400 check") to A.K.

(6)    On or about March 28, 2001, A.K. deposited the $7,400 check into A.K.'s BFSFCU account.

**Overt Acts (7)-(12) Regarding Diversion of Returned Bank Funds owed to I.G.**

(7)    On or about March 30, 2001, A.K. caused a more senior assistant to replace I.G.'s account number with defendant ODOKARA's BFSFCU account number in SAP.

(8)    On or about March 30, 2001, A.K. changed IG.'s payment method in SAP from check by mail to money wire into BFSFCU.

(9)    On or about March 30, 2001, A.K. prepared a payment request for the Bank's treasury department to wire $5,000 in returned Bank funds owed by the Bank to I.G. into defendant ODOKARA's BFSFCU account.

(10)    On or about April 2, 2001, A.K. caused the Bank's treasury department to wire $5,000 intended by the Bank for I.G. into defendant ODOKARA's BFSFCU account.

(11)    On or about April 3, 2001, defendant ODOKARA wrote a BFSFCU check in the amount of $2,500 ("the $2,500 check") to A.K.

(12)    On or about April 3, 2001, A.K. deposited the $2,500 check into A.K.'s Chevy Chase account.

**Overt Acts (13)-(19) Regarding Diversion of Returned Bank Funds Intended for S.M.**

(13)    On or about April 9, 2001, A.K. caused a more senior assistant to enter defendant ODOKARA's BFSFCU account number for S.M. in SAP.

(14)    On or about April 9, 2001, A.K. changed S.M.'s payment method in SAP from check

by mail to money wire into BFSFCU.

(15) On or about April 9, 2001, A.K. prepared a payment request for the Bank's treasury department to wire $7,761 in returned Bank funds intended by the Bank for S.M. into defendant ODOKARA's BFSFCU account.

(16) On or about April 9, 2001, A.K. removed the payment block in SAP on the returned Bank funds intended for S.M.

(17) On or about April 10, 2001, A.K. caused the Bank's treasury department to send by wire $7,761 in returned Bank funds intended by the Bank for S.M. into defendant ODOKARA's BFSFCU account.

(18) On or about April 11, 2001, defendant ODOKARA purchased a cashier's check in the amount of $3,500 ("the $3,500 cashier's check") and payable to A.K.

(19) On or about April 11, 2001, A.K. deposited the $3,500 cashier's check into A.K.'s Chevy Chase account.

**Overt Acts (20)-(28) Regarding Diversion of Returned Bank Funds Owed to J.L.**

(20) On or about April 18, 2001, A.K. caused a more senior assistant to replace J.L.'s account number with defendant ODOKARA's Women in Need account number in SAP.

(21) On or about April 19, 2001, A.K. caused the Bank to issue a payment order to its treasury department to wire $10,000 in returned Bank funds owed by the Bank to J.L. into defendant ODOKARA's Women in Need account.

(22) On or about April 19, 2001, A.K. caused the Bank's treasury department to send by wire $10,000 in returned Bank funds owed by the Bank to J.L. into defendant ODOKARA's Women in Need account ("April 19, 2001 money wire").

(23)    On or about May 23, 2001, A.K. changed J.L's payment method in SAP from check by mail to money wire into BFSFCU.

(24)    On or about May 23, 2001, A.K. removed the payment block in SAP on the returned Bank funds involving the April 19, 2001 money wire.

(25)    On or about May 23, 2001, A.K. caused a more senior assistant to replace J.L.'s account number with defendant ODOKARA's BFSFCU account number in SAP.

(26)    On or about May 23, 2001, A.K. prepared a payment request to the Bank's treasury department to wire $10,000 in returned Bank funds owed to J.L. into defendant ODOKARA's BFSFCU account.

(27)    On or about May 24, 2001, A.K. caused the Bank's treasury department to wire $10,000 in returned Bank funds owed to J.L. into defendant ODOKARA's BFSFCU account.

(28)    On or about May 24, 2001, defendant ODOKARA caused a money wire in the amount of $3,000 to be sent from defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

**Overt Acts (29)-(34) Regarding Diversion of Returned Bank Funds Owed to D.L.**

(29)    On or about April 23, 2001, A.K. caused a more senior assistant to replace D.L.'s account number with defendant ODOKARA's BFSFCU number in SAP.

(30)    On or about April 23, 2001, A.K. removed D.L.'s payment method by electronic funds transfer from SAP.

(31)    On or about April 23, 2001, A.K. caused a more senior assistant to change D.L.'s payment method in SAP to money wire into BFSFCU.

(32)    On or about April 23, 2001, A.K. caused an assistant to prepare a payment request to the Bank's treasury department to wire $9,495 in returned Bank funds owed by the Bank to D.L. into

defendant ODOKARA's BFSFCU account.

(33) On or about April 24, 2001, A.K. caused the Bank's treasury department to wire $9,495 into defendant ODOKARA's BFSFCU account.

(34) On or about April 24, 2001, defendant ODOKARA caused a money wire in the amount of $4,600 to be sent from defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

**Overt Acts (35)-(41) Regarding Diversion of Returned Bank Funds Owed to M.G.**

(35) Between on or about March 27, 2001 and on or about June 8, 2001, A.K. caused a more senior assistant to replace M.G.'s account number with defendant ODOKARA's BFSFCU account number in SAP.

(36) On or about June 8, 2001, A.K. caused an assistant to change M.G.'s payment method in SAP from check by pick-up to money wire.

(37) On or about June 8, 2001, A.K. caused an assistant to remove the payment block in SAP on the returned Bank funds intended for M.G.

(38) On or about June 8, 2001, A.K. caused the Bank to issue a payment order to its treasury department to wire $20,459.24 in returned Bank funds owed by the Bank to M.G. into defendant ODOKARA's BFSFCU account.

(39) On or about June 11, 2001, A.K. caused the Bank's treasury department to wire $20,459.24 in returned Bank funds owed by the Bank to M.G. into defendant ODOKARA's BFSFCU account.

(40) On or about June 11, 2001, defendant ODOKARA caused a money wire in the amount of $5,000 to be sent from defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

(41) On or about June 11, 2001, defendant ODOKARA caused a money wire in the amount

of $2,513 to be sent from defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

**Overt Acts (42)-(47) Regarding Diversion of Returned Bank Funds Owed to P.T.**

(42)     On or about June 19, 2001, A.K. caused a more senior assistant to replace P.T.'s account number with defendant ODOKARA's BFSFCU account number in SAP.

(43)     On or about June 20, 2001, A.K. changed P.T.'s payment method in SAP to money wire into BFSFCU.

(44)     On or about June 20, 2001, A.K. removed the payment block in SAP on the returned Bank funds intended for P.T.

(45)     On or about June 21, 2001, A.K. caused the Bank to issue a payment order to its treasury department to wire $8,858 in returned Bank funds owed by the Bank to P.T. into defendant ODOKARA's BFSFCU account.

(46)     On or about June 22, 2001, A.K. caused the Bank's treasury department to wire $8,858 in returned Bank funds owed by the Bank to P.T. into defendant ODOKARA's BFSFCU account.

(47)     On or about June 27, 2001, defendant ODOKARA caused a money wire in the amount of $6,000 to be sent from defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

**Overt Acts (48)-(55) Regarding Diversion of Returned Bank Funds Owed to M.M.**

(48)     On or about June 26, 2001, A.K. transferred a $12,000 credit involving returned bank funds owed by the Bank to M.M. into defendant ODOKARA's BFSFCU account.

(49)     On or about June 26, 2001, A.K. caused the Bank to issue a payment order to its treasury department to wire $12,000 in returned Bank funds owed to M.M. into defendant ODOKARA's BFSFCU account.

(50)     On or about June 26, 2001, A.K. changed M.M.'s payment method in SAP to money

wire into BFSFCU.

(51) On or about June 27, 2001, A.K. caused the Bank's treasury department to wire $12,000 into defendant ODOKARA's BFSFCU account.

(52) On or about August 24, 2001, A.K. issued a $12,000 credit to M.M. in SAP.

(53) On or about August 24, 2001, A.K. prepared a payment request for the Bank's treasury department to wire $12,000 to M.M.

(54) On or about August 27, 2001, A.K. caused the Bank's treasury department to wire $12,000 from the Bank to M.M. ("August 27, 2001 money wire").

(55) On or about September 24, 2001, A.K. transferred the debt owed to the bank from M.M. as a result of the August 27, 2001 money wire to defendant ODOKARA.

**Overt Acts (56)-(60) Regarding Diversion of Returned Bank Funds Intended for E.H.**

(56) On or about July 6, 2001, A.K. transferred a credit involving returned Bank funds owed to E.H. in the amount of $20,218 to M.G.'s account with the Bank.

(57) On or about July 6, 2001, A.K. changed M.G.'s payment method in SAP to money wire into BFSFCU.

(58) On or about July 6, 2001, A.K. caused the Bank to issue a payment order to its treasury department to wire $20,218 into defendant ODOKARA's BFSFCU account.

(59) On or about July 9, 2001, A.K. caused the Bank's treasury department to wire $20,218 into defendant ODOKARA's BFSFCU account.

(60) On or about July 9, 2001, defendant ODOKARA caused $7,000 wire to be sent from

defendant ODOKARA's BFSFCU account to A.K.'s BFSFCU account.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done, in violation of Title 18 United States Code, Sections 371 and 2)**

### FORFEITURE ALLEGATION

1.      The violation alleged in Count One of this Information is realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7).

2.      As a result of the offense alleged in Count One of this Information, the defendant in this Information, shall forfeit to the United States, any property constituting or derived from proceeds traceable to said violation, including but not limited to the following:

> A sum of money equal to $108,666.24, representing the amount of proceeds obtained as a result of the offense of conspiracy to commit theft concerning programs receiving federal funds, in violation of 18 U.S.C. §§ 371 and 666(a)(1)(A).

By virtue of the commission of the felony offense charged in Count One of this Information, any and all interest that the defendant has in the property constituting or derived from proceeds traceable to such offense is vested in the United States and hereby forfeited to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7).

3.      If any of the property described above as being subject to forfeiture pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), incorporating by reference Title 18, United States Code, Section 1956(c)(7), as a result of any act

or omission of the defendant:

    1)     cannot be located upon the exercise of due diligence;

    2)     has been transferred or sold to, or deposited with, a third person;

    3)     has been placed beyond the jurisdiction of the Court;

    4)     has been substantially diminished in value; or

    5)     has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C).)**

    Respectfully Submitted,
    KENNETH L. WAINSTEIN
    UNITED STATES ATTORNEY
    FOR THE DISTRICT OF COLUMBIA
    Unified Bar Number 246470

By: _____
    JONATHAN ROSEN
    Assistant United States Attorney
    Fraud and Public Corruption Section
    555 4th St., N.W.
    Washington, D.C. 20530
    (202) 514-6991